# In the United States Court of Federal Claims

No. 22-274
(Filed: August 28, 2023)

**NOT FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FLOYD JOHNSON, | \* |
| Plaintiff, | \* |
| v. | \* |
| THE UNITED STATES, | \* |
| Defendant. | \* |

Motion to Dismiss; Rule 12(b)(1); Subject-Matter Jurisdiction; *Pro Se*.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Floyd Johnson*, Daytona Beach, FL, *pro se*.

*Rafique O. Anderson*, U.S. Department of Justice, Washington, DC, counsel for Defendant.

### OPINION AND ORDER

**DIETZ, Judge.**

*Pro se* plaintiff, Floyd Johnson,[1] asserts several claims against the United States for injuries that he allegedly sustained as a result of exposure to lead-based paint. Before the Court is the government's motion to dismiss Mr. Johnson's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and for failure to state a claim pursuant to RCFC 12(b)(6). Because the Court finds that Mr. Johnson fails to identify a money-mandating source of law that provides this Court with jurisdiction to hear his claims, the government's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED**.

### I.  BACKGROUND

Mr. Johnson is incarcerated at the Tomoka Correctional Institution in Daytona Beach, Florida. *See* [ECF 6] at 1, 3.[2] Mr. Johnson states that, as a child, he was "exposed to lead paint, and either ate or inhaled lead dust particles[.]" Compl. [ECF 1] ¶ 31. He alleges that, as a result

---

[1] In the caption of his complaint, Mr. Johnson lists several other plaintiffs. [ECF 1] at ¶ 2-8. However, pursuant to Rule 83.1(a)(3) of the Rules of the United States Court of Federal Claims, *pro se* plaintiffs are not permitted to represent other *pro se* plaintiffs. Therefore, the Court recognizes Mr. Johnson as the only plaintiff in this case.

[2] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

of such exposure, he "suffered years of physical and mental abuse[,]" including "fits, tantrums, learning difficulties, irritability, seizures, high blood pressure, joint and muscle pain, difficulties with memory or concentration, headaches, mood disorders, [and] criminal behavior." *Id.* ¶ 40. He further states that, since 1970, he has been "in and out of hospitals[,] mental health facilities, [and] prison as a direct result of these injuries." *Id.* ¶ 41.

Mr. Johnson filed a complaint in this Court on March 7, 2022, alleging that his exposure to lead-based paint and resulting injuries were caused by violations of law and other actions by the federal government and several commercial entities, mostly within the paint industry. *See* [ECF 1] ¶¶ 9-17. Mr. Johnson asserts that the United States Department of Housing and Urban Development ("HUD") "failed to provide appropriate measures to eliminate as far as practicable immediate hazards due to the presence of a paint which may contain lead and to which children may be exposed[.]" *Id.* ¶ 21. He also asserts that the United States Environmental Protection Agency ("EPA") violated his "civil and constitutional rights by failing to identify lead-based paint hazards, lead contaminated dust, lead contaminated soil, behavior altering lead paint, and to establish [a] nation[al] actionable dust-lead hazard standard[.]" *Id.* ¶ 24. Additionally, Mr. Johnson contends that there was a conspiracy between the government and the commercial entities "to conceal the effects of lead which predispose children and adults to criminal activity[,]" including "not revealing internal studies showing exposure to lead paint can predispose criminal behavior." *Id.* ¶ 25. Mr. Johnson seeks $10,000,000 "as compensatory damages for years of incarceration, for lost wages, fatherhood, etc." and $1,000,000 "in punitive damages for the Florida and Federal [Racketeer Influenced and Corrupt Organization ('RICO')] Act violations, and the conspiracy to conceal the personal human effects of lead-based paint." *Id.* ¶¶ 42-43.

The government moved to dismiss Mr. Johnson's complaint on December 15, 2023, for lack of subject-matter jurisdiction and for failure to state a claim.[3] [ECF 15]. Mr. Johnson filed a response on January 17, 2023, [ECF 17], and the government filed a reply on February 3, 2023. [ECF 18]. The government's motion is fully briefed, and the Court has determined that oral argument is not necessary.

## II.     LEGAL STANDARDS

This Court is a court of limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Court's jurisdiction is defined by the Tucker Act, which waives the sovereign immunity of the United States for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2018). The Tucker Act, however, is "merely a jurisdictional statute and does not create a substantive cause of action." *Rick's Mushrooms Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). To establish the Court's jurisdiction, a plaintiff must "identify a substantive source of law that creates the right to recovery of money damages against

---

[3] The government also moved to dismiss Mr. Johnson's complaint on May 10, 2022, and October 28, 2022. [ECFs 8, 11]. However, these earlier motions were not properly served on Mr. Johnson and were deemed moot after the government filed the instant motion to dismiss. [ECF 16].

the United States." *Rick's Mushrooms Serv., Inc.*, 521 F.3d at 1343 (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)).

Jurisdiction is a threshold issue that the court must address before proceeding to the merits of the case. *See Remote Diagnostic Techs. LLC v. United States*, 133 Fed. Cl. 198, 202 (2017) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). A motion to dismiss for lack of subject-matter jurisdiction challenges the court's "general power to adjudicate in specific areas of substantive law[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1). When considering a motion to dismiss for lack of jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

The Court construes pleadings from *pro se* plaintiffs liberally. *See Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018). The leniency afforded to *pro se* plaintiffs, however, does not give the court "discretion to bend . . . [or] take a liberal view of jurisdictional requirements for *pro se* litigants[.]" *Stanley v. United States*, 107 Fed. Cl. 94, 98 (2012). *Pro se* plaintiffs must still establish the Court's jurisdiction by a preponderance of the evidence. *See Spengler v. United States*, 688 F. App'x 917, 920 (Fed. Cir. 2017); *Trevino v. United States*, 113 Fed. Cl. 204, 208 (2013), *aff'd*, 557 F. App'x 995 (Fed. Cir. 2014).

### III. DISCUSSION

Mr. Johnson makes various claims against HUD, the EPA, and the commercial entities stemming from his alleged exposure to lead-based paint and his resulting injuries. The government argues that the Court should dismiss Mr. Johnson's complaint because it "fails to allege any basis for jurisdiction pursuant to the Tucker Act." [ECF 15] at 3. The government states that Mr. Johnson "appears to assert tort, constitutional, and criminal claims, which stem from an exposure to lead-based paint as a child" and that such "claims must be 'money-mandating' to come within the jurisdiction of the Court." *Id*. at 2. The government argues that, because Mr. Johnson has failed to identify a substantive source of law that creates the right to money damages, his complaint must be dismissed for lack of subject matter jurisdiction. *Id*. For the reasons explained below, the Court finds that Mr. Johnson has failed to identify a money-mandating source of law that allows this Court to exercise jurisdiction over his complaint and that, therefore, his complaint must be dismissed.[4]

Mr. Johnson states that his claims are "authorized by violation of the Administrative Procedure Act [('APA')]." [ECF 1] ¶ 1. However, the APA is not a money-mandating statute because it only allows a court to "compel agency action unlawfully withheld or unreasonably delayed" or to "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. § 706; *see also* 5 U.S.C. § 702 (granting "relief other than money damages"); *Wopsock v. Natchess*, 454 F.3d. 1327, 1333 (Fed. Cir. 2006) (finding that the APA is not a money-mandating

---

[4] The government also moves to dismiss Mr. Johnson's claim pursuant to RCFC 12(b)6 for failure to state a claim. [ECF 15] at 1. Because the Court finds that it lacks jurisdiction over all of Mr. Johnson's claims, the Court does not address whether any of Mr. Johnson's claims should be dismissed pursuant to RCFC 12(b)(6).

statute). Thus, the Court lacks jurisdiction over Mr. Johnson's claims based on the APA, and such claims must be dismissed. *See Martinez v. United States,* 333 F.3d 1295, 1313 (Fed. Cir. 2003); *Petro Mex, LLC v. United States*, 164 Fed. Cl. 476, 535 (2023) ("[T]he United States Court of Federal Claims lacks jurisdiction over violations of APA claims.").

Mr. Johnson also asserts claims against several commercial entities, [ECF 1] ¶¶ 11-17, and claims based on state law, *id.* ¶ 26 (citing various Florida environmental laws), *id.* ¶¶ 36, 38 (citing Florida RICO Act). However, this Court's jurisdiction extends only to claims against the United States. *United States v. Sherwood*, 312 U.S. 584, 588 (1941). Additionally, this Court does not have jurisdiction over claims based on state law. *See Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007). Therefore, Mr. Johnson's claims against the commercial entities and his claims based on state law must be dismissed.

In addition, Mr. Johnson references several federal statutes in his complaint. Specifically, he alleges that HUD and the EPA violated 42 U.S.C. § 4822 of the Lead-Based Paint Poisoning Prevention Act of 1971 ("LPPPA") and 42 U.S.C. § 1437d(k) of the Housing Act of 1937 ("Housing Act"). [ECF 1] ¶¶ 18, 34. Mr. Johnson asserts that HUD violated the LPPPA by "fail[ing] to provide appropriate measures to eliminate as far as practicable immediate hazards due to the presence of a paint which may contain lead and to which children may be exposed[.]" *Id.* ¶ 21. He also asserts that the EPA violated the Toxic Substances Control Act ("TSCA") by "failing to identify lead-based paint hazards, lead contamination dust, lead contaminated soil, behavior altering lead paint, and to establish [a] nation[al] actionable dust-lead hazard standard[.]" *Id.* ¶ 24. Mr. Johnson also makes vague references to the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), *id.* ¶ 26 (citing 42 U.S.C. 4851(4)), and the Federal Clean Air Act, *id*. The relevant portions of the statutes invoked by Mr. Johnson do not contain any language that mandates compensation by the federal government for damages resulting from a violation of their respective provisions. *See Ayres v. United States*, 66 Fed. Cl. 551, 560-63 (2005) (holding that the LPPPA, TSCA, and RLPHRA are not money-mandating statutes that give this Court jurisdiction over a case); *see also Mitchell,* 463 U.S. at 217 (stating that a plaintiff must show that "the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.") (quoting *Testan*, 424 U.S. at 400) (internal quotation marks omitted)); *Broughton v. United States*, 2018 WL 5307677, *3 (Fed. Cl. Oct. 26, 2018); *Bowling v. United States*, 93 Fed. Cl. 551, 559-60 (2010) (holding that the Clean Air Act "is intended to address environmental harm rather than personal injury claims.").[5] Because these federal statutes do not provide a money-mandating

---

[5] While not specifically invoked by Mr. Johnson, the TSCA does include a citizen suit provision that allows a person to bring a civil suit against the United States or any government agency alleged to be in violation of the TSCA. *See* 15 U.S.C. § 2619(a). However, such a suit must be filed in United States district court, not in this Court. *See* 15 U.S.C. § 2683(a). Further, the citizen suit provision is limited to suits for injunctive relief to restrain violations of the TSCA and is not intended for personal injury claims. *See* 15 U.S.C. § 2683(a)(1); *Bowling*, 93 Fed. Cl. at 559; *Ayres*, 66 Fed. Cl. at 561 (stating that the TSCA "authorizes suit against the United States only for injunctive relief[.]"). Further, the portion of the Housing Act cited by Mr. Johnson, 42 U.S.C. § 1437d(k), requires that "each public housing agency receiving assistance under this chapter . . . establish and implement an administrative grievance procedure[.]" This portion of the Housing Act is not money-mandating because it only provides for the establishment of a procedure, not for the recovery of money damages from the Federal government. *See Mitchell*, 463 U.S. at 217.

source of law that provides this Court with jurisdiction, Mr. Johnson's claims based on these statutes must also be dismissed.[6]

Mr. Johnson alleges that he "suffer[ed] injuries from 1970 [to the] present day as a direct result of Defendant's failure to adhere to federal statute[s]" and "suffered years of physical and mental abuse as a direct result of Defendant's . . . violations." [ECF 1] ¶¶ 35, 40. However, these allegations are personal injury claims that sound in tort, and it is well-established that the Tucker Act does not provide this Court with jurisdiction over tort claims. *See* 28 U.S.C. § 1491; *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997); *Francis v. United States*, 2019 WL 4784824, at *2 (Fed. Cl. Oct. 1, 2019) (finding that "Plaintiffs claims for failure to enforce health and safety standards are properly construed as claims for negligence, fraud, or other wrongful conduct."). Therefore, Mr. Johnson's personal injury claims must be dismissed.[7]

Furthermore, Mr. Johnson alleges that HUD conspired with various paint manufacturers "to conceal that lead paint causes a predisposition to crime in children and adults, [and] failed to and refuse[d] to notify tenants and inspect and eliminate the poisonous lead based paint[.]" [ECF 1] ¶ 28. Mr. Johnson alleges that this conspiracy violates the federal RICO Act, as well as his due process rights under the Fifth and Fourteenth Amendments. *Id.* ¶ 29. This Court lacks jurisdiction over his RICO Act claim because the RICO Act is not money-mandating and such claims are within the exclusive jurisdiction of United States district courts.[8] *See* 18 U.S.C. § 1964; *Julian v. United States*, 658 F. App'x 1014, 1016-17 (Fed. Cir. 2016) (holding that the RICO Act is not "a money-mandating statute conferring jurisdiction on the Court of Federal Claims"); *Stanwyck v. United States*, 127 Fed. Cl. 308, 315 (2016) (The RICO Act "provides for a civil action within the exclusive federal jurisdiction of U.S. district courts, and not this court."). Further, this Court lacks jurisdiction over Mr. Johnson's due process claims because the Fifth and Fourteenth Amendments' due process clauses are not money-mandating. *See Smith v. United States,* 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."). Mr. Johnson's RICO Act and due process claims must therefore also be dismissed.

---

[6] In his response to the government's motion to dismiss, Mr. Johnson argues that the LPPPA and the Housing Act "create binding obligations on governmental entities that are sufficient to create a right under [42 U.S.C. § 1983]." [ECF 17] at 4. However, claims for violations of civil rights under Section 42 U.S.C. § 1983 are outside the jurisdiction of this Court because they are not based on any money-mandating provision. *See Ramirez v. United States*, 239 F. App'x 581, 583 (Fed. Cir. 2007) (no jurisdiction over civil rights claims based under section 1983); *Tucker v. United States*, 142 Fed. Cl. 697, 712 (2019).

[7] The Federal Tort Claims Act ("FTCA") permits claims "against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government[.]" 28 U.S.C. § 1346(b)(1). However, claims made pursuant to the FTCA are within the exclusive jurisdiction of federal district courts. *See* 28 U.S.C. § 1346(b)(1); *Robleto v. United States*, 634 F. App'x 306, 308 (Fed. Cir. 2015); *see also Ayres*, 66 Fed. Cl. at 562 ("Since neither the TSCA, the LPPPA, nor the RLPHRA mandate compensation by the federal government for damages sustained as a result of the breach of the duties imposed by such statutes, the Federal Tort Claims Act would be the proper vehicle for relief.").

[8] To the extent that Mr. Johnson alleges a violation of the criminal portion of the RICO Act, this Court lacks jurisdiction over criminal matters. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code[.]").

Lastly, Mr. Johnson states that he is an "intended third party beneficiary of the Annual Contributions Contract . . . between [HUD] and the Housing Authority in all American cities[.]" [ECF 1] ¶ 37. To determine third-party beneficiary status, the Court evaluates "whether or not the contract reflects the express or implied intention of the parties to benefit the party claiming third-party beneficiary status." *Sullivan v. United States,* 54 Fed. Cl. 214, 216 (2002) (quoting *First Hartford Corp. v. United States,* 42 Fed. Cl. 599, 605 (1998), *rev'd on other grounds,* 194 F.3d 1279 (1999)). Here, Mr. Johnson only mentions a contract, the Annual Contributions Contract,[9] once in his complaint. *See* [ECF 1] ¶ 37. He does not provide a copy of the contract or otherwise identify the provisions of the contract on which his claims are founded. Mr. Johnson's conclusory statement that he is a third-party beneficiary to an unidentified contract is not sufficient to properly allege third-party beneficiary status. *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (stating that the "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim[.]"); *see also Kelly v. United States*, 2022 WL 1020283, at *2 (Fed. Cir. Apr. 6, 2022).

Because the Court finds that it lacks subject-matter jurisdiction over Mr. Johnson's claims, the Court considers whether any of his claims should be transferred to another court. 28 U.S.C. § 1631 provides "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]" The decision to transfer a case "rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011) (quoting *Faulkner v. United States*, 43 Fed. Cl. 54, 56 (1999)). The phrase "in the interest of justice" has been interpreted to apply to "claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987). The Court finds that the transfer of Mr. Johnson's claims would be futile because they are either frivolous or are "unlikely to be meritorious." *Phang v. United States,* 87 Fed. Cl. 321, 330-31 (2009), *aff'd,* 388 F. App'x 961 (Fed. Cir. 2010); *Schrader v. United States*, 103 Fed. Cl. 92, 101 (2012).[10]

## IV.    CONCLUSION

Because the Court finds that Mr. Johnson has failed to identify a money-mandating source of law that provides this Court with jurisdiction, the government's motion to dismiss is

---

[9] An Annual Contributions Contract is "a contract prescribed by HUD for loans and contributions, which may be in the form of operating subsidy, whereby HUD agrees to provide financial assistance and the [Public Housing Agency] agrees to comply with HUD requirements for the development and operation of its public housing projects." 24 C.F.R. § 990.115.

[10] Mr. Johnson previously filed a complaint in the United States District Court for the Middle District of Florida, alleging claims like those in his complaint filed in this Court. The district court dismissed his complaint as frivolous and for failure to state a claim. *Johnson, et al. v. Sherwin-Williams, et al.*, No. 20-2122, slip op. at 5 (M.D. Fla. Nov. 30, 2020).

**GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

    **IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge
